<hr />

JOHN R. McNULTY

*v.*

EUGENE J. McCARTHY et al.

[Decided February 21st, 1911.]

1. After examination of the trusts created and declared in a trust deed dated April 1st, 1895, in a creditor's suit to satisfy a judgment out of land conveyed by a judgment debtor (the settlor) to a trustee for himself and his children, where it appeared that the complainant's debt was contracted after 1902 and the judgment recovered October 25th, 1905— *Held,* that such deed is a fraudulent device as to all the future creditors of the settlor.

2. Under the authority of *Washington National Bank* v. *Beatty*, 77 *N. J. Eq.* (7 *Buch.*) *252*, the rule seems to be now settled in this state that a voluntary conveyance made with actual fraudulent intent is void as against any subsequent creditor of the grantor although his debt was contracted long after the voluntary conveyance is made, and was not then contemplated by the grantor as a possibility.

3. As between the judgment debtor and the trustee and his children, such deed is valid, and will be set aside only so far as is necessary to pay the complainant's debt.

4. So much of such deed as defines the trust further examined, and under it the settlor was *held* to take a life estate in the rents and income of the estate (which amounts to the same thing as an equitable life estate in the *corpus*), and his equitable interest is primarily liable for the debt, and should be exhausted before recourse is had to the interests of the remaindermen.

5. In case recourse is had to the interests of the remaindermen, provision may be made in the decree for apportioning the complainant's debt equitably among the different shares.

---

Case heard on bill, answer, replication and proofs taken in open court.

Creditor's suit to satisfy a judgment out of land conveyed by a judgment debtor to trustee for himself and his children. Date of trust deed, April 1st, 1895. Complainant's debt contracted after 1902 and judgment recovered October 25th, 1905.

The land, which is situate in Jersey City, was conveyed as aforesaid by the defendant William Winberry, party of the first part named in the deed, to the defendant Eugene J. McCarthy, party of the second part, upon the following trusts:

"1. That he (the party of the second part) will allow the said party of the first part to manage and control said property, as he may think best for the interest of his children hereinafter named and to collect and receive all of the rents and income from the same and apply same to such purposes as he may desire during the term of his natural life.

"2. That he will at any time when requested in writing so to do by party of the first part, convey to Anna Winberry, daughter of said party of the first part, the property situate upon Wayne street, being the property hereinbefore second above described, to have and to hold to her, her heirs and assigns, forever.

"3. That in case of the death of the said party of the first part without making such request, leaving said Anna Winberry him surviving, he will then convey said Wayne street property to her, to have and to hold, to her, her heirs and assigns, forever.

"4. That he will at any time when requested so to do by said party of the first part in writing, convey to William Winberry, the son of said party of the first part, the farm situate in Rockland county, New York, being property hereinbefore first above described, to have and to hold unto said William Winberry, his heirs and assigns, forever.

"5. That in case of the death of said party of the first part before making the request to convey said farm to his said son, William Winberry, leaving his said son him surviving, he will then convey said farm to said William Winberry, to have and to hold unto him, his heirs and assigns, forever.

"6. That he will at any time, when requested in writing so to do by the said party of the first part, convey to Mary E. Winberry, Ray Winberry and Eleanor Winberry, three of the children of the said party of the first part, the Gregory street property above mentioned, being the three lots and parcels hereinbefore last above described, to have and to hold unto said Mary, Ray and Eleanor as tenants in common and unto their heirs and assigns, forever.

"7. That in case said party of the first part shall desire to have the three last mentioned lots conveyed separately and severally to said Mary, Ray and Eleanor, each to have one of them and shall so request in writing, designating which lot shall be conveyed to each of said children, he will make such conveyance accordingly, conveying one of said lots to said Mary, one to said Ray and one to said Eleanor, to have and to hold to each of them respectively, their heirs and assigns, forever.

"8. That in case of the death of said party of the first part without requesting the conveyance of said Gregory street property, leaving said Mary, Ray and Eleanor him surviving, he will then convey the said property to them as tenants in common, to have and to hold unto them, their heirs and assigns, forever.

"9. In case of the death of any of said children of said party of the first part, without leaving lawful issue and before the conveyance to him or her of the property above described, as hereinbefore directed, then he will hold the property which would have been conveyed to such child so dying, if he or she had lived to receive such conveyance, in trust for the use and benefit of the surviving children of said party of the first part, to be conveyed to them as may be directed by said party of the first part, or if he fail to give such direction, then upon his death to be conveyed to said surviving children as tenants in common, to have and to hold to them, their heirs and assigns, forever."

*Mr. Charles H. Hartshorne,* for the complainant.

*Mr. Charles J. Roe* and *Mr. Addison Ely,* for the defendants.

STEVENSON, V. C.

1. My conclusion of fact is that the whole trust in question was a fraudulent device as to all the future creditors of the settlor. It is, in my opinion, a transparent scheme to enable Mr.

Winberry to enjoy the full control and use of all his property, or the more valuable part of it, while he could contract debts with impunity. In case a creditor should become urgent and proceed to apply to his debt whatever beneficial equitable interest Mr. Winberry reserved to himself in the trust estate, he (Mr. Winberry), according to the terms of the trust, could disappoint the pressing creditor by calling upon the trustee to convey the estate to his (Winberry's) children in the prescribed portions. Mr. Winberry thus had a string on the several portions which he intended to allot to his children which enabled him to remain practically the owner of his estate for his own uses and purposes, while he would have nothing to satisfy any debts which he might thereafter contract. It certainly would be discouraging to a creditor to undertake to reach the equitable life interest of Mr. Winberry when, at the end of an expensive litigation like the present one, the whole life estate could be terminated at the word of Mr. Winberry and the entire estate become vested in his children.

In my judgment the law ought not to tolerate, and does not tolerate, such devices. The fraudulent intent extends to all future indebtedness. I think this is a case of actual fraud which directly affects all debts which Mr. Winberry might contract at any time after the trust conveyance was made.

2. As between Mr. Winberry and the trustee and his children the conveyance in trust of course is valid. The conveyance will be set aside only so far as is necessary to pay the debt of the complainant.

3. In my opinion under the first paragraph defining the trust, Mr. Winberry takes a life estate in the rents and income of the estate which amounts to the same thing as an equitable life estate in the *corpus*. He is expressly allowed to manage and control the property and to apply the rents and income to *"such purposes as he may desire during his natural life."* It is impossible to find that there is any intention here that the income shall be applied only to purposes relating to the support or welfare of the children. The requirement that he shall manage and control "as he may think best for the interest of his children"

indicates to my mind only a cunning intention to make it appear that the children are equitably interested in the income during Mr. Winberry's lifetime, while in fact such is not the case. This provision savors of fraud and deceit. Mr. Winberry is to manage and control the *corpus* for the interest of his children while he can apply the income to all "such purposes as he may desire."

The equitable interest of Mr. Winberry is primarily liable for the debt and should be exhausted before recourse is had to the interest in remainder belonging to the children.

4. On account of the peculiar character of the trust by which the attempt is made to enable Mr. Winberry to distribute, his estate among his children whenever his life estate is attacked, it may not be important to provide in the decree for the exhaustion of the life interest before recourse is had to the interests of the remaindermen. This matter may be determined upon settlement of the decree.

In case recourse is had to the interests of the remaindermen provision, perhaps, may be made in the decree for apportioning the complainant's debt equitably among the different shares. My recollection is that the share of one child consists of land situate in the State of New York. How far equality of burdens among the children may be incidentally effected while granting the complainant the relief to which he is entitled, may also be determined upon settlement of the decree. This matter has not been the subject of argument and possibly it may be proper to take some additional testimony. It occurs to me, whether an appeal is taken or not, that this matter may be reserved. If the complainant's debt is to be paid out of this entire estate, it may be surmised that the defendants may avoid having the decree adjust any equities *inter sese,* if they are all now of full age, by making arrangements satisfactory to themselves.

\* \* \* \* \* \* \* \* \* \*

The foregoing memorandum was furnished to counsel as a sufficient exposition of the theory upon which the decree in favor of the complainant was based. If when this memorandum was prepared I had had the benefit of the opinion of Judge Dill, written for the court of errors and appeals in the case of *Wash-*

*ington National Bank* v. *Beatty et al.* (*June 21st, 1910*), 77 *N. J. Eq.* (7 *Buch.*) 252, the decree might also have been stood upon another ground. Probably the somewhat uncertain condition of our law, which the above-cited case cleared up, impelled me to avoid the discussion of several questions which were fully argued by counsel in regard to the nature of the fraudulent intent of the settlor requisite to make his gift void as against debts subsequently contracted, and not within the scope of his actual fraudulent intention. In this case of *Washington National Bank* v. *Beatty* the opinion contains what purports to be a deliverance of the entire court, which although not necessary to the decision of the case, must, I think, be regarded as settling the law of the state so far as this court is concerned.

Under the authority of this decision, or this deliverance, this voluntary settlement by Winberry must be regarded as void as against the complainant's debt, which began to be contracted eight years later, and was plainly entirely beyond the contemplation of Winberry when the trust deed was made in 1895. The evidence satisfied my mind beyond all question that this voluntary conveyance in trust made in 1895 was made with actual intent on the part of the grantor, Winberry, to put his property where his then existing creditors could not reach it. The trust deed bears date April 1st, 1895, and was recorded July 2d, 1895, and on July 19th, 1895, the creditors of Winberry settled with him for fifty cents on the dollar in cash and notes. I do not think that it is possible under the circumstances proved in this case to doubt the actual fraudulent intent of Winberry in making this voluntary conveyance in trust. Under the sweeping rule applicable to this case laid down by the court of errors and appeals in the above-cited recent case it seems to be unnecessary to enter into the question whether any of the indebtedness existing when the voluntary conveyance was made and within the actual fraudulent intent of Winberry, remained unpaid when the complainant's debt was contracted, or when this suit was begun, or what the effect of such fact may be under our law or the law of other jurisdictions. Accepting what strictly speaking seems to be a *dictum* in the opinion of Judge Dill as an authorized deliverance

of the court of errors and appeals, the rule seems to be now settled in New Jersey that a voluntary conveyance made with actual fraudulent intent is void as against any subsequent creditor of the grantor even though his debt was contracted long after the voluntary conveyance was made, and was not then contemplated by the grantor as a possibility. A voluntary deed having the taint of fraud and being therefore voidable as to any creditor seems to stand permanently as void against all future creditors of the grantor, however remote in time the creation of their debts may be from the making of the fraudulent conveyance, and however far removed they may be from any actual fraudulent intent of the grantor. As stated by Judge Dill, if the conveyance is shown to have been made with actual intent to defraud "any creditor either existing at the time when the conveyance is made or subsequently," then it follows that "the conveyance is proven to be fraudulent and it may be set aside at the instance of any class of creditors without regard to the time when the debt came into existence."